**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROSA E. TRUJILLO,                )   NO. CV 11-1220 SS
                                 )
          Plaintiff,             )
                                 )
     v.                          )   **MEMORANDUM DECISION AND ORDER**
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of the Social       )
Security Administration,         )
                                 )
          Defendant.             )
_____)

**I.**

**INTRODUCTION**

Rosa E. Trujillo ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Alternatively, she asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the

reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## II.

### PROCEDURAL HISTORY

Plaintiff initially requested benefits on May 16, 2005, alleging a disability onset date of August 1, 2000 due to injuries to her back, neck, and discs; tendonitis in both hands and arms; glaucoma; and blindness in right eye.  (AR 100).  After the Agency denied benefits, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 22, 2007.  (AR 608-10).  Plaintiff was not represented by counsel at the hearing.  (AR 610-11).  On March 7, 2007, the ALJ issued a decision denying benefits.  (AR 16-29). Plaintiff's request for appeal was denied by the Appeals Council on May 25, 2007, making the ALJ's decision the final decision for the Agency. (AR 9).

Subsequently, Plaintiff filed action in federal court, and, following a Stipulation for Remand, the Court remanded the action.  (AR 653-57).  On May 9, 2009, the ALJ conducted a second hearing where Plaintiff appeared with counsel and testified.  (AR 728-45).  Again, the ALJ issued an opinion denying benefits on June 26, 2009.  (AR 634-46). On October 30, 2010, the Appeals Council declined jurisdiction, making the ALJ's most recent opinion the final decision of the Agency.  (AR 627).  Plaintiff then filed this second action in federal court.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404,

---

[1]  Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

1    Subpart P, Appendix 1?  If so, the claimant is found
2    disabled.  If not, proceed to step four.
3    (4)   Is the claimant capable of performing his past work?  If
4    so, the claimant is found not disabled.  If not, proceed
5    to step five.
6    (5)   Is the claimant able to do any other work?  If not, the
7    claimant is found disabled.  If so, the claimant is
8    found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§
404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets his burden of
establishing an inability to perform past work, the Commissioner must
show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's residual functional capacity ("RFC"),[2] age, education, and
work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may
do so by the testimony of a vocational expert or by reference to the
Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart
P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240

_____

[2]    Residual functional capacity is "what [one] can still do
despite [his] limitations" and represents an "assessment based upon all
of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

## III.
### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u>  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21.

\\

\\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**DISCUSSION**

**A.    The ALJ Failed To Properly Consider Treating Physician Evidence When He Evaluated Plaintiff's Fibromyalgia**

An ALJ must afford the greatest weight to the opinion of the claimant's treating physician.  The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record.  Id. at 830-31; see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

Further, when considering a potential disability caused by fibromyalgia, the Ninth Circuit recognized that objective findings "do not establish the presence or absence of fibromyalgia." Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004). Specifically, "fibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are

6

entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia."  Id.  Instead, a fibromyalgia diagnosis can only be confirmed by a specific test where a patient reports pain in five parts of the body and when at least eleven of eighteen points cause pain when palpated by an examiner's thumb.  Id. (citing Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001)).

Where a treating physician's opinion is contradicted "the [ALJ] must determine credibility and resolve the conflict."  Valentine v. Comm'r, 574 F.3d 685, 692 (9th Cir. 2009) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)).  "However, to reject the opinion of a treating physician in favor of a conflicting opinion . . . an ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Id. (internal quotation marks omitted).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the [physician's] are correct."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (internal citation omitted). Additionally, in order for the ALJ to properly reject a treating physician's opinion relating to fibromyalgia, the ALJ must first attempt to recontact the treating physician to receive clarification of any conflict in the evidence.  SSR 99-2p at *6.

Here, Dr. Ho clearly diagnosed and treated Plaintiff for over five years for fibromyalgia.  (AR 458-73, 710-24).  He based his diagnosis on clinical findings such as the presence of numerous fibromyalgia tender points, sleep disturbances, and muscle spasms.  (AR 541).  Dr. Ho completed a Fibromyalgia Questionnaire concluding that Plaintiff

7

1    could be on her feet for only two hours in a workday, and that she would
2    be incapable of performing low stress jobs because of her pain and
3    likely prolonged absences from the work place.  (AR 542-45).  Given the
4    length and frequency of the treating relationship with Dr. Ho, Dr. Ho's
5    clinical findings, and Dr. Ho's repeated confirmation of a fibromyalgia
6    diagnosis, the ALJ's characterization of Dr. Ho's diagnosis of
7    fibromyalgia as a "naked diagnosis" (AR 641) without support is simply
8    belied by the record.

9

10   Further, the ALJ erred by discounting Dr. Ho's opinion on the
11   grounds that Dr. Ho relied on Plaintiff's subjective complaints of pain.
12   (Id.).  A patient's subjective report of pain and symptoms is paramount
13   for diagnosing fibromyalgia.  Benecke v. Barnhart, 379 F.3d 587, 590
14   (9th Cir. 2004).  Contrary to the ALJ's assertion that Dr. Ho failed to
15   provide sufficient treatment to support Plaintiff's complaints, the
16   record shows that Dr. Ho provided substantial treatment.  For example,
17   Dr how submitted reports showing extensive testing (AR 458-59, 463-65,
18   711-15); record of medications including Vicodin, Effexor, Naproxen,
19   Tramadol, Prevacid, Prilosec, Trazodone (AR 459-69); and physical
20   therapy treatment.  (AR 458).  Additionally, even Dr. Sourehnissani,
21   whose opinion the ALJ relied upon to determine Plaintiff's RFC, did not
22   reject Dr. Ho's diagnosis of fibromyalgia.  (AR 693).  Therefore, the
23   reasons provided by the ALJ to reject Dr. Ho's diagnosis of fibromyalgia
24   are not sufficient to meet his burden of specific, legitimate reasons
25   supported by substantial evidence.

26

27

28

8

**C.    The ALJ Failed To Provide Clear And Convincing Reasons In Rejecting Plaintiff's Pain Testimony**

Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting a plaintiff's testimony must be "clear and convincing." <u>Lester</u>, 81 F.3d at 834.  An ALJ may not discredit a plaintiff's testimony solely because the degree of pain alleged by the plaintiff is not supported by objective medical evidence. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir. 1991).  Moreover, in cases involving fibromyalgia, "when additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the [ALJ] must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements."  SSR 99-2p at *7.

Here, the ALJ rejected Plaintiff's subjective complaints because they were "out of proportion to the objective clinical findings" and there was "no evidence of sever disuse muscle atrophy that would be compatible with her alleged inactivity and inability to function for the past 9 years."  (AR 644).  Additionally, the ALJ claimed that the "conservative" treatment record was inconsistent with Plaintiff's testimony.  (<u>Id.</u>).  These reasons are, again, undermined by the actual record and are not legitimate reasons for rejecting Plaintiff's complaints.

First, the ALJ's assertion that Plaintiff's complaints were out of proportion to her treatment record is unfounded.  While there are no objective tests for diagnosing fibromyalgia, at least one doctor, Dr.

9

Ho, performed a trigger point test and confirmed fibromyalgia. <u>Jordan</u>, 370 F.3d at 872. As discussed above, Dr. Ho also submitted numerous records documenting Plaintiff's pain and suffering. (AR 458-59, 463-65, 711-15). This medical evidence is consistent, in fact, with Plaintiff's testimony.

Second, the absence of muscular atrophy is not inconsistent with Plaintiff's testimony because she admitted some ability to move, despite her pain. (AR 736-38); <u>Jordan</u>, 370 F.3d at 594 ("[O]ne does not need to be utterly incapacitated in order to be disabled.") (internal citation omitted). Third, the ALJ's characterization of Plaintiff's treatment as "not aggressive" is inaccurate. Plaintiff has a long list of strong medications, taken consistently for many years and attended physical therapy at least twice a week. (AR 710-15, 738). Because there is no surgery or other known cure for fibromyalgia, this degree of treatment qualifies as substantial treatment. Therefore, the ALJ failed to provide legitimate clear and convincing reasons for rejecting Plaintiff's pain testimony.

### D.   **The ALJ Failed To Provide Reasons Germane To The Witness For Rejecting Lay Testimony**

An ALJ must consider lay testimony relating to a plaintiff's alleged disability. <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009). If an ALJ rejects lay testimony, he must provide specific reasons that are germane to each witness. <u>Id.</u> (citing <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir. 2006). In cases of fibromyalgia, an ALJ must also "carefully consider" third-party information because such

3c5a9f85bbb3b9d6

sources "help to assess an individual's ability to function on a day-to-day basis and to depict the individual's capacities over a period of time."  SSR 99-2p at *8.

Here, the ALJ erred because he did not "carefully consider" third party information when he failed to address Plaintiff's daughter's written statement.  Further, although the ALJ recognized the daughter's testimony, his reason for rejecting it was not germane to the witness. Bruce, 557 F.3d at 1115.  Merely asserting that the daughter's "subjective statements that Plaintiff is incapable of functioning are not corroborated by the objective medical evidence" is not a reason germane to the witness to reject such testimony.  Furthermore, the ALJ cannot discount the daughter's opinion on the grounds that it is not corroborated by objective medical evidence, because fibromyalgia does not require the existence of objective medical evidence.  See Jordan, F.3d at 382.  Therefore, the ALJ improperly discounted the daughter's lay opinion.

**E.   The ALJ Failed To Provide Specific And Legitimate Reasons For Rejecting Other Treating Physician Evidence**

The ALJ failed to provide specific, legitimate reasons for rejecting Dr. Gromis' opinion.  Dr. Gromis diagnosed Plaintiff with musculoligamentous strain of her lumbar and cervical spine, and a 3-4 millimeter protrusion in both her lumbar and cervical spine.  (AR 296, 331).  According to Dr. Gromis, Plaintiff's limitations precluded her from "heavy lifting (no lifting over 10 pounds), repeated bending and stooping . . . ."  (AR 298).

11

1    In his most recent decision, the ALJ discounted Dr. Gromis' opinion
2    by merely stating it has "already been addressed and discounted" in the
3    prior decision.  (AR 639).  In the prior decision, the ALJ discounted
4    Dr. Gromis' opinion because it conflicted with State Agency examiner Dr.
5    Workman (AR 298, 412) and "objective imaging testing shows only mild
6    abnormality, the claimant has never been advised to have any spinal
7    surgery, and objective functionality testing, such as range of motion
8    and straight leg testing, do not indicate any acute abnormality."  (AR
9    24).  However, the ALJ's reasons are not an accurate reflection of the
10   record.

12       MRI's of Plaintiff's lumbar and cervical spine support Dr. Gromis's
13   conclusions, as she was found in 2005 to have a 3 to 4 mm. posterior
14   disc protrusion, consistent with a disc herniation.  (AR 176-77).
15   Further, while Plaintiff did not have major back surgery, the record
16   shows substantial treatment including lumbar facet block injections,
17   epidural injections, radio frequency decompression neurolysis, and
18   prescription pain medication.  (AR 178-206).  Moreover, contrary to the
19   ALJ's assertions, Dr. Gromis's examination revealed decreased cervical
20   spine range of motion and decreased lumbar spine range of motion.  (AR
21   297).  Therefore, the ALJ's reasons for discounting Dr. Gromis' opinion
22   were not specific and legitimate.

24       Second, the ALJ failed to provide specific, legitimate reasons for
25   rejecting Dr. Curtis's psychiatric opinion.  Dr. Curtis concluded that
26   "[Plaintiff's] psychological fatigue, impaired concentration and an
27   associated inability to relate to people without becoming readily
28   overwhelmed may all add up to an outcome wherein [she] would not be able

12

1   to sustain employment. . . ."   (AR 242-43).   The ALJ's reasons for
2   dismissing Dr. Curtis' opinion were not legitimate.  Specifically, while
3   the ALJ asserted that Dr. Curtis only found one area of slight-to-
4   moderate functional limitations (AR 25), the record shows that Dr.
5   Curtis found three areas of functional limitations.  (AR 240).  Further,
6   the ALJ's view that Dr. Curtis "actually believes [Plaintiff] can work"
7   (AR 25) is not supported by the record.  Dr. Curtis merely hypothesized
8   that Plaintiff would be able to return to the work "within the
9   foreseeable future" without providing reasons for such an assertion.
10  However, the gravamen of Dr. Curtis' opinion reflected substantial
11  limitations and the ALJ failed to address those findings either in
12  rejecting Dr. Curtis' opinion or in Plaintiff's RFC.  As such, remand
13  is required.

14

15      **F.    The ALJ Disregarded The Express Directions Of The**
16              **Remand Order By Failing To Reevaluate Plaintiff's**
17              **RFC**

18

19      In the remand order[3] dated May 6, 2008, the district court's order
20  specifically stated "It is hereby ordered . . .  that this case is
21  remanded to the Commissioner of Social Security for further proceedings
22  **consistent with the Stipulation for Remand** . . ."  (AR 654).  In the
23  Stipulation for Remand, signed by counsel for each party, the parties
24  agreed that "Upon remand to an Administrative Law Judge, the claimant's
25  impairments including her visual problem should be fully addressed.  **The**
26  _____

27      [3]  The Court notes that this was a stipulated remand, i.e., the
    Commissioner's own counsel drafted the language of the stipulation and
28  must have believed that these deficiencies needed to be corrected on
    remand.

1  **claimant's credibility and residual functional capacity should be**
2  **reevaluated.**   The issue of whether the claimant can perform her past
3  relevant work or other jobs should be considered.   Supplemental
4  vocational expert evidence should be obtained, if warranted." (AR 656)
5  (emphasis added).   Because the Court's Order incorporated the
6  Stipulation for Remand by reference, the ALJ was required to follow the
7  instructions of the Stipulation for Remand.

8
9       Instead, the ALJ specifically disregarded these instructions.  For
10  example, the ALJ stated: "I note that neither the District Court nor the
11  Appeals Council objected by [sic] my analysis of the objective medical
12  record nor the residual functional capacity found . . . Consequently,
13  I incorporate by reference my prior decision of March 7, 2007."  (AR
14  639).   This statement is directly contrary to the instructions of the
15  Stipulation for Remand.

16
17       The ALJ failed to reevaluate Plaintiff's RFC and credibility and
18  thus did not comply with the Remand Order.   In Ischay v. Barnhart, 383
19  F. Supp. 2d 1199 (C.D. Cal. 2005), the court observed that "the Agency
20  is not free to disregard its marching orders on remand[.]"   Id. at 1214.
21  "[T]he district court's remand order will often include detailed
22  instructions concerning the scope of the remand, the evidence to be
23  adduced, and the [] issues to be addressed . . . [d]eviation from the
24  court's remand order in the subsequent administrative proceedings is
25  itself legal error, subject to reversal on further judicial review."
26  Id. (quoting Sullivan v. Hudson, 490 U.S. 877, 886, 109 S. Ct. 2248, 104
27  L. Ed. 2d 941 (1989)).  Because the ALJ committed legal error by failing
28  to follow the remand order of the district court, remand is again

14

required.  Due to the ALJ's failure to follow the specific directives of the Court's prior remand order, the Court ORDERS that the case be assigned to a different Administrative Law Judge following this remand order.[4]

**V.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with (1) the 2008 prior remand order and Stipulation for Remand and (2) this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 22, 2011.

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[4]   Because the Court finds remand is required on the issues discussed above, it is unnecessary to reach Plaintiff's remaining arguments.

[5]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

15